Lizzie Wilson, Respondent, *v.* Maria Heath, as Executrix of the Last Will and Testament of Orin Heath, Deceased, Appellant.

*Newly-discovered evidence — cumulative evidence — knowledge of handwriting — comparison of signatu*

When newly-discovered evidence is merely cumulative to that given on the trial, it does not furnish a ground for granting a new trial.

On a motion for a new trial, on the ground of newly-discovered evidence, in an action which involved a disputed question as to the genuineness of the signature of a witness to the written contract of a deceased person, affidavits as to procurable evidence were submitted, in which the affiants stated that they had received letters from such witness or had seen him write at or near the time the contract was alleged to have been made, which was some fifteen years before, and had been shown the original contract, and did not hesitate to say that the signature of the witness to the original contract was written by the person whose name it was, but the affiants did not produce the letters or writings referred to. It appeared that the signature of the person in question, attached to his deposition made for and used at the trial, differed from the signature of his name on the contract.

*Held,* that it was incredible that the affiants should be able, after such a lapse of time, if produced as witnesses at a new trial, to describe, from recollection merely, the change which the handwriting of the person in question had undergone between the date of the signing of the contract and the signing of his deposition taken in this case.

On the motion for a new trial, an affiant, who had taken an active part in the case on behalf of the moving party, and had been impeached on the trial, produced certain signatures of the name of the alleged witness to the contract in suit, who was the affiant's son, which signatures he declared he had discovered since the trial, and which he alleged were genuine, but their genuineness was unsupported by other proof.

*Held,* that it was extremely doubtful if such signatures, if offered in evidence upon a new trial, would be held sufficiently proved to furnish a basis for a comparison of them with the signature to the contract, under the statute (Chap. 555 of Laws of 1888), and that it would, under all the circumstances, be an unsafe precedent to grant a new trial upon the ground of such alleged newly-discovered signatures.

Appeal by the defendant, Maria Heath, executrix of the last will and testament of Orin Heath, deceased, from an order made by Mr. Justice Daniels, and entered in the Orleans county clerk's office November 11, 1891, granting to the plaintiff a new trial upon the ground of newly-discovered evidence.

The plaintiff is the daughter of one Robert Hannan. She brought this action against the defendant, upon a contract alleged to have been made by the defendant's testator, Orin Heath August 20 1877. That contract is, *literatim*, as follows:

"WEST BARRE, *August 20th*, 1877.

"This is to Certify that Mr. Heath of Medina agrees to pay Lizzie Hannan, daughter of Robt. Hannan if she Stays with him and goas by the name of Lizzie Heath and his daughter he would Provide for hir in every respect as his own Child if She gets married and Sattle in life I do bind myself to Pay hir Two thousand dollars also give hir a good fitout and She will also have a Daughters share in all that I have.        ORIN HEATH.

"ROBERT HANNAN, Witness.

"WM. HANNAN, Witness."

*S. E. Filkins* and *E. L. Pitts*, for the appellant.

*John J. Ryan*, for the respondent

MACOMBER, J.:

The complaint in this action is based solely upon the above-quoted contract, and prays for judgment for the $2,000 and an outfit, mentioned in the contract, and also for a daughter's share in all of the property left by Orin Heath, amounting in all to $35,500. The answer put in issue the execution of that instrument by the testator.

The plaintiff is one of eleven children of Robert Hannan. In the year 1871, when she was ten years of age, she left her father's home and went to live in Medina with Orin Heath and his wife, and there remained, going generally by the name of Lizzie Heath, until June 20, 1888, when she intermarried with one Samuel J. Wilson. The trial of the issues came on at the Orleans Circuit in May, 1891, and was quite protracted, lasting about a week, and resulted in a verdict of the jury in favor of the defendant. Thereupon a motion for a new trial was made upon the minutes of the court, upon the following grounds: (1) Upon the exceptions; (2) upon the ground of newly-discovered evidence; (3) on the ground that the verdict was contrary to the evidence; (4) for irregularities and surprise; and (5) upon the ground that the jurors were tampered with. Subsequently, affidavits were prepared and served, asking for a new trial upon the

ground of newly-discovered evidence, and these, together with those read in opposition thereto, were considered and passed upon by the trial justice at a time subsequent to the trial term of the court, and that hearing resulted in the order granting a new trial upon the ground of newly-discovered evidence alone.

The learned justice presiding at the trial has written an opinion in which he clearly shows that no error was committed at the trial. The order granting the new trial is, by its terms, made " on the ground of the newly-discovered evidence of Elisha H. Gage, Hannah Turner, Warrington Paige, Artemus J. Goodwin, Clara A. Goodwin, Cornie L. Morgan, John J. Swobe, and the newly-discovered signatures and writing of William Hannan, made about the time of the contract."

It becomes necessary, therefore, to examine these affidavits *seriatim,* to see if they contain any such newly-discovered evidence as to warrant the granting of an order for a new trial. The affidavit of Elisha H. Gage is to the effect that about ten or fifteen years before making the affidavit he met Orin Heath in Medina, when " Mr. Heath said that he had taken a girl, and he went on to speak of her and of his property, and as I recollect the statement, he. said : ' I have taken a little girl, and if she proves a dutiful girl, the same as a daughter to a parent, I intend she shall be an heir, and give her a share of my estate, the same as though she was my daughter.' " Hannah Turner's affidavit is to the effect that in the spring or early summer of 1876 or 1877, Orin Heath was driving by deponent's house, and stopped in the road and had a conversation with deponent, whereupon he said that he had just come from Robert Hannan's house, that he had been there to get Lizzie, but that he did not find her, as she had gone over to Mr. Cozzins', and that he was going over there after her ; that Lizzie's sister had been sick, and that Lizzie had been home to see her, and that now her father said she could not go back with him to live unless he would make a written contract as to the property he would give her. Orin Heath then said further, that he would make a written contract, just as Hannan wished him to, for he wanted her to live with him just as she had done.

Both of these affidavits relate to a mere declaration of a deceased person made many years ago, and were the facts therein stated

adduced upon a trial, would be regarded as evidence of a very unreliable character. But irrespective of those considerations, it seems to us, that in character and kind, though not in the identical fact there mentioned, they are obnoxious to the rule against allowing new trials where the proposed evidence is merely cumulative. Much evidence of the general character and description of this contained in these two affidavits was actually given upon the trial, namely, the declaration of Orin Heath, made at or about the time the plaintiff went to live with him, and subsequently, all of which was designed to, and did, tend to the same general result sought upon the trial, presenting a condition of things where the jury might say that the testator was likely to have made a contract similar to the one relied upon in this action. This was conspicuously so in the testimony given by Robert Hannan. But Robert Hannan, in order to break the great weight of suspicion which his concealment of the contract until after the death of Orin Heath naturally awakened, testified that its existence was kept secret by him at the request of Mr. Orin Heath himself. Hence it is that these affidavits, particularly that of Mrs. Turner, go far to upset an important theory of the plaintiff's case as made at the trial.

The affidavits of Artemus J. Goodwin, Clara A. Goodwin and Cornie L. Morgan may be considered together. They are in substance, that they had received letters from William Hannan, or had seen him write at or near the time this contract is alleged to have been made, and that what purported to be the original contract in this action was shown to them, and they did not hesitate to say that the signature, as a witness, of William Hannan, together with the word "witness," was written by William Hannan himself. But these proposed witnesses do not produce the letters or writings of William Hannan, and it is incredible that they should be able, at this late day, if produced as witnesses on a new trial, from recollection merely, to describe the changes which the handwriting of William Hannan had undergone between the time of witnessing the contract and the time of signing his deposition taken in this case.

The affidavit of Warrington Paige was, in substance, that Heath told him that about the year 1877, that he had no heirs or descendants to whom to leave his property, but that there was a young girl living with him who would have his property, who would be pretty

well off when he got through with it. This evidence, if given upon the trial, would be of the same general character as that already produced, and at best would show no more than an expression of a purpose by Mr. Heath that was never carried out, of adopting this girl under the statute.

Swobe's affidavit is, that about the year 1875, he saw Orin Heath and Lizzie Heath, now Lizzie Wilson, in Orin Heath's garden; deponent asked Heath if that was his girl, and he replied yes, and deponent asked him how many children he had, and he replied "None of our own, this is a girl we have taken." Then deponent asked "Is it one you have adopted?" and he replied "Yes," and then deponent and he talked on the topic of children. That he appeared to be very proud of her and he then said that he had taken her as one of his own children, and to be as one of his own, and she should have all that he had got, the same as though she was his own, when he got through with it. This, too, is of the same character as Paige's affidavit, and the same comment would apply to this as to the other.

But the greatest stress is laid upon the newly-discovered signatures of William Hannan, one of the witnesses to the alleged contract. These signatures are produced in connection with, and are described in the affidavit of Robert Hannan, the father of the plaintiff, and the person who has had the principal management of the case in behalf of the plaintiff and in procuring the evidence for the trial. In his affidavit he says that some days before the beginning of the trial of this action, the plaintiff's counsel urged him to search for and to obtain signatures in the handwriting of deponent's son William Hannan. That he was unable to procure any at that time, as William Hannan was in the State of Washington, but since the trial he has searched and made the following discoveries of such signatures: that after the verdict, he says, he was searching an old cupboard upstairs among a lot of very old books and found a book entitled "History of M. E. Church, by Doctor Bangs, Volume 12," on the back part of the frontispiece of which deponent found the following signature and handwriting of William Hannan: "W. Hannan, Braggs Corners, July 4, 1875, at home with a sore hand," the alleged original of which was produced upon the hearing. He then testifies that this was the

genuine signature of William Hannan; that the *n's* and *m's* used in this signature are sharp pointed, and the signature is almost identical with that of William to the contract in question. The second new signature he found in possession of his son-in-law, Earnest Myhill, in a copy of "Robinson Crusoe," which belonged to William, wherein it was written "William Hannan's book, April 4th, 1881." This was also exhibited at the hearing and contains the same characteristics of handwriting as that upon the contract in suit. Another one he found in the possession of one of his daughters, Jennie, in a book entitled "The Daughters of America," wherein it is written "Wm. Hannan to Jennie Hannan, January 6th, 1878." At the same interview his daughter Jennie produced an arithmetic containing the signature of William Hannan.

It is a singular fact that neither the affidavit of Earnest Myhill nor that of Jennie was made to these important matters. All of those signatures rest solely upon the unsupported and *ex parte* oath of Robert Hannan himself, who was impeached upon the trial as a man unworthy of credit in any case where he was interested. Though the defense was not confined to an effort to prove that Robert Hannan signed Orin Heath's name to the contract, yet it is very evident that the jury believed that he was the author of the entire instrument, including all the signatures. That conclusion was borne out by the testimony of many witnesses who were called in the defense.

It was conceded at the trial that Robert Hannan wrote the body of the instrument. That instrument was before the jury and it has been placed before us, and we are not prepared to say that the jury was not warranted, from the appearance of the paper itself, and from the history of the case as related by the several witnesses, in arriving at the conclusion that Robert Hannan was the sole author and signer of that instrument. Shall the *ex parte* affidavit of a witness, so interested as Robert Hannan clearly is, touching these new signatures, be regarded as of sufficient moment to warrant a court in setting aside a verdict and granting a new trial? There is nothing in his affidavit which would bring the case within the rule that, in all probability, such evidence, if obtained at the trial would have produced a different result. He himself knew, as he says in his affidavit, that there had been a change in the handwriting of

William Hannan from the time that this contract was made to the time of the trial, when William Hannan's testimony was taken by commission ; yet he did not offer himself as a witness upon that subject at the time of the trial.

The controversy over William Hannan's signature arose incidentally, though it was anticipated by the plaintiff's managers. It was there claimed that his two signatures upon the deposition taken on commission, which of course were genuine, were so unlike his supposed signature as a witness to this agreement, that the signing by him of that instrument was denied at the trial. We cannot say that the question whether or not he was a *bona fide* signer of that paper is not an important one, although whether he signed it or not would make no difference, provided it had been shown that Orin Heath himself had signed it.

Were these several signatures of William Hannan which are now produced, offered in evidence upon a new trial, it is extremely doubtful if it could be held that such signatures had been sufficiently proved to furnish a basis for a comparison of those writings with the signature to the written contract. By chapter 555 of the Laws of 1888, which materially amended chapter 36 of the Laws of 1880, relating to this subject, it is permitted to give evidence of comparison, but it must be shown that the subject of the comparison is the genuine handwriting of the person claimed on the trial to have executed the disputed writing or instrument. We must assume that the proof in relation to these new signatures of William Hannan would be the same at the trial as they are in this record. They would stand, therefore, as having been produced by Robert Hannan and upon his oath in regard to their genuineness, unsupported by any other proof. The court, under such circumstances, would, under chapter 555 of the Laws of 1888, probably feel compelled to exclude such comparison. But, however that may be, it is the common experience of courts and juries that there is scarcely a kind of evidence which is more susceptible of abuse in actual practice than a resort to a comparison of signatures. Such testimony is at the best but opinion testimony, not having within itself any element of fact. We think, therefore, that it would be an unsafe precedent in this instance to grant a new trial upon this ground, and we are constrained to differ from the learned justice before whom the case was

tried, in respect thereto, as well as upon the sufficiency of the other affidavits relied upon by counsel for the plaintiff.

The order appealed from should be reversed.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Order appealed from reversed, with costs.